ORIGINAL

FILED IN CHAMBERS
SEP 07 2006
U.S. MAGISTRATE JUDGE
N.D. GEORGIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL ACTION FILE |
| : | |
| DENNIS A. MARTIN, : | NO. 1:06-CR-286-TCB |
| : | |
| Defendant. : | |

## MEMORANDUM OPINION AND ORDER

This matter came before the Court on a Petition for Action on Conditions of Pretrial Release [Doc. 12], alleging that Defendant Martin violated the conditions of his release by trading in securities on behalf of a third person. Specifically, the terms of Defendant's June 22, 2006, release prohibited him, *inter alia*, from acting, directly or indirectly, as a stockbroker, trader or financial advisor, Additional Conditions of Release ¶ 7(x), and trading in securities on his own behalf or for any third party. *Id.* ¶ 7(y). [Doc. 5 at 2].[1] At the conclusion of the hearing, the Court revoked Martin's

---

[1] Defendant's conditions of release also incorporated by reference the terms of orders issued by the District Court in *S.E.C. v. Martin*, Civil Action File No. 1:06-CV-1078-TCB, as well as the orders of the Fulton County Superior Court, Case No. 06SC44668, and Cobb County Superior Court, case style and number unavailable. At the time the Court released Martin, it did not know the specific terms of the orders entered in the other cases. Therefore, the Court imposed the express conditions in ¶¶ 7(x) and (y). The present order does not, and is not intended to, speak to whether the conduct to which Martin admitted also violates the District Court's injunction or

release and directed that he be detained. This Order more fully sets out the Court's reasoning.

Defendant appeared at the hearing and admitted the allegations. In summary, after Martin was placed on pretrial release, he traded securities in an account in the name of his mother and step-father. Gov't Exh. 1. The account had been opened prior to Defendant being placed on release. On pretrial release, Martin traded approximately $32,000, which he appears to have lost. *Id.* This trading activity came to light when Martin was deposed by the government in a financial deposition taken pursuant to his guilty plea. Martin initially denied having conducted any trades. *See* Gov't Exh. 2 at 50-52. Immediately after the deposition, he told his attorney that he had been less than forthcoming in the deposition. Martin authorized his lawyer to disclose to the government the existence of the trades. In addition, shortly thereafter, Martin admitted the conduct which formed the basis of the instant petition to his pretrial services supervisor.

Revocation of release is governed by 18 U.S.C. § 3148(b), which provides, in material part:

---

the State court orders.

2

> The judicial officer **shall** enter an order of revocation and detention if, after a hearing, the judicial officer--
>
> (1) finds that there is--
>
>> (B) clear and convincing evidence[2] that the person has violated any other condition of release; and
>
> (2) finds that--
>
>> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>>
>> (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b)(1)(B), (2)(A) and (B). Section 3148(b) also provides that if the court finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the court shall treat the person in accordance

---

[2] Clear and convincing evidence is evidence which "'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 286 n.11 (1990) (quoting *In re Jobes*, 108 N.J. 394, 529 A.2d 434, 441 (1987)).

3

with the provisions of 18 U.S.C. § 3142 and may amend the conditions of release accordingly.

Based on the evidence submitted and Defendant's admissions, there is clear and convincing evidence that Martin violated the terms and conditions of his pretrial release. The Court now must consider whether application of the factors set out in § 3142(g) favor his continued release, and given the violation of the initial conditions of release, whether he is unlikely to abide by any additional condition or combination of conditions of release.

As a result of the violations, the Government argues that Martin's violation of the expressed terms of his release, considering that the Government actively was seeking to recover funds for victims of Defendant's misconduct, warrants an order of detention. The Government primarily argues that to continue Martin on release in light of his violations of the conditions of release is the equivalent of a free "do over." Martin offers several facts to mitigate but not excuse his breach of the conditions of release, and also argues that since there are additional conditions with which he would comply, detention is not mandated.

Initially, the Court rejects the Government's reasoning, because the Court is not authorized to, in effect, mete out punishment to Martin for violating the terms of his

4

release, notwithstanding the fact that revoking release must feel an awful lot like punishment to Defendant. Rather, outside of a prosecution for contempt under 18 U.S.C. § 3148(b), the Court is limited to considering the factors in 18 U.S.C. § 3148(b)(1) and determining whether Defendant is unlikely to abide by any further conditions.

Martin first contends that he should not be punished for his self-report of the release conditions. He argues that this sends the wrong signal to released defendants if they are revoked after self-reporting their violations. The Court would be more persuaded by this argument if his violations were confined to a single incident and his disclosure was not preceded by his failure to disclose his trading in his sworn testimony. It is just as likely that, rather than experiencing some altruistic epiphany, the questions posed to Martin at the financial deposition - - *see* Gov't Exh. 2 at 114-116, including questions about his mother, investment accounts for her, and Benjamin Greenstein, a step-brother from whom Martin claimed to be estranged but whose name appeared in at least one of the suspect transactions, Gov't Exh. 1, fourth page from end headed "page 13 of 30" - - led him to conclude that his violations soon would be uncovered. Again, "sending signals" is not a legitimate purpose of a § 3148(b)(1)

AO 72A
(Rev.8/82)

proceeding, but if it was, ignoring Defendant's violations certainly would send the "wrong signal."

Further, that Martin advised his lawyer of his violations and then authorized their disclosure to the government, knowing revocation was likely, are very commendable actions, but the question remains, given the repeated although short-lived nature of his violations, whether the Court can conclude that he will abide by any future limitations imposed. In addition, while the Court is sympathetic to Martin's concerns that a revocation may adversely impact either his guideline sentence or his Bureau of Prisons custody-level designation, neither is an appropriate consideration under § 3148(b).

Martin also proffers that his trades were, in part, his misguided attempt to raise funds (all of his assets are frozen) in order to meet living expenses and pay his lawyer, and his only recourse was to trade in securities because that is his only fund-generating skill. While it is admirable that he sought to live up to his financial commitment to his lawyer, Martin violated the express terms of the Court's bond in his attempt to do so.

Martin also showed that he was cooperating with counsel for the victims in their efforts to locate their purloined assets. However, even on its small scale, Martin's continued trading in his mother's account was inconsistent with these remedial efforts.

6

In any event, his revocation and detention does not preclude, but merely makes more inconvenient, his continued cooperation.

Finally, Martin presents an alternative to revoking his release by proffering that removing computers from his household and preventing his access to any computers, in order to forestall any further trading, are additional conditions with which he would abide. The Court disagrees. The release conditions violated by Martin could not have been more clear. They specifically applied to trading on his own behalf as well as for third parties. At the hearing when bond was set and the release terms were imposed, the Court made it clear that Martin could not trade in securities for any purpose, and that one of the consequences for doing so would be revocation of release. Additional conditions imposed to prevent the exact same mischief do not convince the Court that Martin is any more likely to comply with those conditions, given that his need for funds remains the same.

**ACCORDINGLY**, Defendant's release is **REVOKED** and he is committed to the custody of the U.S. Marshal to be detained in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on

7

request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED**, this the _7th_ day of _September_, 2006, *nunc pro tunc* to September 5, 2006.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**